UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE RIVERA, CDCR #G-16129,<br><br>                               Plaintiff,<br><br>vs.<br><br>SAN DIEGO CENTRAL JAIL; SAN DIEGO COUNTY SHERIFF; and JOHN & JANE DOES,<br><br>                              Defendants. | Case No.: 19-CV-1259 JLS (NLS)<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS, AND (2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) AND 1915A(b)**<br><br>(ECF No. 7) |

On July 8, 2019, Plaintiff Jorge Rivera, while incarcerated at the San Diego County Central Jail ("SDCCJ"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging several jail officials interfered with his right to religious worship and denied him access to the courts, his medical devices, medical treatment, and clean drinking water. *See generally* ECF No. 1 ("Compl."). Plaintiff filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* ECF No. 2. On July 31, 2019, the Court denied his IFP motion for lack of documentation. *See* ECF No. 3. He has now filed a renewed Motion to Proceed IFP ("IFP Mot.," ECF No. 7).

/ / /

/ / /

**MOTION TO PROCEED *IN FORMA PAUPERIS***

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1), (4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. ___, 136 S. Ct. 627, 629 (2016). Prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in monthly installments, regardless of whether their action is ultimately dismissed. *Bruce*, 136 S. Ct. at 629; 28 U.S.C. §§ 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report attested by a CDCR trust account official. IFP Mot. at 4–5. This document shows Plaintiff had a

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

single deposit of $12.23 in his trust account for the six months preceding the filing of this action and an available balance of $0.03 at the time of filing the IFP Mot. *See id.* at 5.

The Court **GRANTS** Plaintiff's IFP Motion; declines to exact any initial filing fee because his prison certificates indicate he may have "no means to pay it," *Bruce*, 136 S. Ct. at 629; and directs the Secretary of the CDCR, or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

**SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**

**I.    Standard of Review**

Because Petitioner is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss an IFP prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

/ / /

556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II. Analysis

### A. *42 U.S.C. § 1983*

Section 1983 of Title 42 of the United States Code provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

*1. First Cause of Action: Cruel and Unusual Punishment (Medical Care)*

Plaintiff claims in his first cause of action that while he was housed at the SDCCJ from June 4 through 24, 2019, John Doe Deputy Sheriff "denied [him] assistance [he] ha[d] requested from him in obtaining [his] ortho shoes, wheeled walker, cane made of metal and . . . adjustable by telling [Plaintiff] they will assist in obtaining the DMEs for [him] and at the end of his shift leave and never get back to [him] to explain anything, and the next day come in and act as if [Plaintiff] never requested anything." Compl. at 3. He alleges that, upon arrival at the jail, his pain medication and medical devices were taken away; he was provided only with a wheelchair and his hearing aids; and he was subjected to cruel and unusual punishment because he was required to wear slippers rather than his orthopedic shoes, was given Tylenol or aspirin for his pain rather than Neurontin, and was provided a wheelchair which is "falling apart" and was refused a replacement. *Id*. at 5, 9. He further alleges that Jane Doe jail employee "had [him] sign a form by falsely telling [him] she would get [him] ortho shoes," *id*. at 2, and that John Doe doctor is responsible for "the medical condition and treatment of Plaintiff suffered due to his neglect of treatment." *Id*.

"[A] prison official violates the [Cruel and Unusual Punishments Clause of the] Eighth Amendment when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825,

834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* Second, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind' . . . . [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety." *Id.* at 837. In other words, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Plaintiff does not allege the John and Jane Doe Defendants he asked for assistance in the return of his medical devices, the John Doe doctor, or anyone else at the SDCCJ either knew of and deliberately ignored a serious medical need he had for those devices or for medical treatment or knew of and deliberately ignored a risk to his health or safety. Plaintiff, therefore, has failed to satisfy the pleading standards with respect to his cruel and unusual punishment claim regarding the denial of access to his medical devices and the medical care he received, and this cause of action is dismissed for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### 2. *Second Cause of Action: Denial of Access to Courts*

Plaintiff claims in his second cause of action he was denied access to the courts. Compl. at 3–4, 6. Inmates have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). To state such a claim, Plaintiff must allege facts showing he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation." *Nevada v. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 351). Plaintiff's allegations that he was denied access to legal forms, law books, and writing supplies, Compl. at 3), and that he gave a defendant "the form from [his] § 1983 to verify how much is in [his] inmate funds for the last 6 months and all he did was take it and never brought it back to [Plaintiff], or send it to the trust office to verify, in order to keep [him] from filing with the court civil litigation against the San Diego County Central Jail and its staff," *id.* at 3–4, are insufficient to state a claim of denial of

access to the courts. Plaintiff does not state how long he was denied those materials, and a temporary lack of access to legal material does not rise to the level of a constitutional violation. *Vigliotto v. Terry*, 873 F.2d 1201, 1202–03 (9th Cir. 1989).

More fundamentally, Plaintiff must allege facts showing actual injury arising from the lack of access to those materials, that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. He must allege the loss of a "non-frivolous" or "arguable" underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Plaintiff has failed to satisfy any of these pleading standards with respect to his denial of access to courts claim, as he has not identified any underlying claim he was frustrated from presenting to the courts. Accordingly, his second cause of action alleging a denial of access to the courts is dismissed for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

### *3. Third Cause of Action: Denial of Free Exercise of Religion*

Plaintiff claims in his third cause of action that, while he was at SDCCJ, he was denied his "right to worship at a church of [his] religion" when his request to attend church service was denied three times and his prayer cap was taken and not returned. Compl. at 7. The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).

To state a claim under the Free Exercise Clause, a prisoner must plausibly allege that a prison official's actions (a) "substantially burden[]" the exercise of a sincerely-held religious belief, and (b) were not "rationally related to legitimate penological interests."

*Jones v. Williams*, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015). "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." *Id.*; *see also Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998) (intrusions which are "relatively short-term and sporadic" do not constitute a substantial burdens under the First Amendment); *Brown v. Washington*, 752 F. App'x 402, 405 (9th Cir. 2018) (noting that a "one time set of circumstances" or an "isolated incident" is insufficient to constitute a "substantial burden of plaintiff's religious beliefs" under the First Amendment).

In addition, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution[,] . . . even if the burden results from a rule of general applicability," unless the government demonstrates the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a); *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015). "To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a 'religious exercise,' and (2) the State's actions have substantially burdened that exercise." *Id.* (quoting *Shakur v. Schriro*, 514 F.3d 878, 888–89 (9th Cir. 2008)). "If the prisoner satisfies those elements, then the State must prove its actions were the least restrictive means of furthering a compelling governmental interest." *Id.* (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)).

To constitute a substantial burden, the alleged limitation on religious practice must impose "a 'significantly great' restriction or onus upon such exercise." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004); *Walker*, 789 F.3d at 1135. A substantial burden need not actually force a litigant to change his practices; a violation may occur "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify

///

his behavior and to violate his beliefs." *Warsoldier*, 418 F.3d at 995 (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 717–18 (1981)).

Here, Plaintiff sufficiently alleges a sincerely held religious adherence to Jewish teachings which require him to attend services and wear a prayer cap. *See* Compl. at 7. He further alleges, however, only that his request to attend religious services was denied on three occasions and his prayer cap was taken. *See id.* Isolated occasions of the denial of a religious practice does not violate the First Amendment. *See, e.g.*, *Howard v. Skolnik*, 372 F. App'x 781, 782 (9th Cir. 2010) (finding two incidents where prison staff interfered with prisoner's fasting did not amount to a substantial burden); *Canell*, 143 F.3d at 1215 (holding "relatively short-term and sporadic" interference with religious exercise was not a substantial burden). Plaintiff's allegations of having his request to attend religious services three times and the loss of his prayer cap, without more, and in particular without factual allegations regarding the circumstances surrounding the taking and keeping of his prayer cap and denial of his request to attend religious services, fail to state a First Amendment or RLUIPA claim because, without more, he has not alleged the imposition of "a significantly great restriction or onus" on the exercise of his faith, and no defendant is alleged to have put "substantial pressure on [him] to modify his behavior and to violate his beliefs." *Warsoldier*, 418 F.3d at 995. Thus, Plaintiff's interference with religion claims is dismissed for failing to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

    *4.*   *Fourth Cause of Action: Cruel and Unusual Punishment (Water)*

Finally, Plaintiff claims in his fourth cause of action he was subject to cruel and unusual punishment because he "found out by word of mouth" that the drinking water at the jail is contaminated. Compl. at 8. As set forth above, to allege a claim for cruel and unusual conditions of confinement, the deprivation alleged must be—objectively—"sufficiently serious," and the prison officials he seeks to hold liable must be alleged to have had a "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834.

8

A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety" and he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Although Plaintiff alleges that he is required to drink water to take his medication and the jail refused to provide bottled water, he does not allege he drank any contaminated water or suffered any injury as a result; instead, he alleges only that he heard by word of mouth that the water is contaminated. *See* Compl. at 8. Although Plaintiff alleges the jail staff knew the water was contaminated, such a conclusory allegation, without factual support, does not plead an a § 1983 claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a § 1983 claim]."). In addition, he does not name as a defendant anyone who served him contaminated water or refused his request for clean drinking water despite knowing the water was contaminated. Thus, his cruel and unusual punishment claim based on being housed at a jail where the water was contaminated is dismissed for failing to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### B. *Doe Pleading and Individual Liability*

Plaintiff has named as Defendants the SDCCJ, the San Diego County Sheriff, Jane Doe Prison Librarian, John Doe Doctor, and John Doe Correctional Officer. Compl. at 1–2. The Federal Rules of Civil Procedure do not authorize or prohibit the use of fictitious parties, but Rule 10 does require a plaintiff to include the names of all parties in his complaint. *See* Fed. R. Civ. P. 10(a). Courts especially disfavor Doe pleading in an IFP case because, in the event the plaintiff's complaint alleges a plausible claim for relief, it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant. *See* Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d). Plaintiff may seek discovery to obtain the names of the Does and later amend his pleading to substitute the true names of those defendants, unless it is clear that discovery will not

9

19-CV-1259 JLS (NLS)

uncover their identities, or that his complaint is subject to dismissal on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("As a general rule, the use of 'John Doe' to identify a defendant is not favored.")).

The only non-Doe Defendants named in the Complaint are the SDCCJ and the Sheriff of San Diego County. *See* Compl. at 1–2. Plaintiff provides no allegations against the jail and merely alleges the Sheriff is responsible for what goes on in his jail. *Id*. With respect to the Sheriff, the simple role as a supervisory official is insufficient to support a personal misconduct claim against him. *See Iqbal*, 556 U.S. at 677 ("[E]ach government official [in a § 1983 suit], his or her own title notwithstanding, is only liable for his or her own misconduct.").

In addition, the SDCCJ is a department of the County of San Diego, not a "person" subject to suit under § 1983. *See e.g., United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005) ("[M]unicipal police departments and bureaus are generally not considered 'persons' within the meaning of section 1983."); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995) ("Although municipalities, such as cities and counties, are amenable to suit under *Monell [v. Department of Social Services*, 436 U.S. 658 (1978)], sub-departments or bureaus of municipalities, such as the police departments, are not generally considered "persons" within the meaning of § 1983.").

Accordingly, the Court also dismisses Plaintiff's Complaint as to Defendants SDCCJ and the San Diego County Sheriff because Plaintiff fails to state a plausible claim for relief against them. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b); *Iqbal*, 556 U.S. at 678.

### C. Leave to Amend

In light of Plaintiff's *pro se* status, the Court grants him leave to amend his pleading to attempt sufficiently to allege a § 1983 claim *against those defendants he is able to identify by name*, if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant

to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## CONCLUSION

For all the reasons discussed, the Court:

1. **GRANTS** Plaintiff's IFP Motion (ECF No. 7) pursuant to 28 U.S.C. § 1915(a);

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and to forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2), with ALL PAYMENTS TO CLEARLY IDENTIFY THE NAME AND CASE NUMBER ASSIGNED TO THIS ACTION;

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001; and

4. **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint in its entirety for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and **GRANTS** him forty-five (45) days' leave from the date of this Order in which to file an amended complaint that cures the deficiencies of pleading noted above. Any amended complaint must be complete in itself without reference to Plaintiff's original Complaint. Defendants not named, and any claim not re-alleged, in Plaintiff's amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

///

Should Plaintiff fail to file an amended complaint within <u>forty-five (45) days</u>, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: January 28, 2020

Hon. Janis L. Sammartino
United States District Judge